**Thomas HOLLAND, Plaintiff**

v.

**SMITH & NEPHEW RICHARDS, INC., Defendant**

**No. Civ.A.96–12396–GAO.**

United States District Court, D. Massachusetts.

Sept. 28, 1999.

Bruce A. Bierhans, Bierhans & Nebenzahl, Boston, MA, for Plaintiff.

Alida M. Coo, Nixon Peabody, Boston, MA, Joseph J. Leghorn, Peabody & Brown, Boston, MA, for Defendant.

### *MEMORANDUM AND ORDER*

O'TOOLE, District Judge.

The plaintiff Thomas Holland brought this action against the defendant Smith &

Nephew Richards, Inc. ("Smith & Nephew"), seeking damages for injuries he attributes to the use of a medical device manufactured and sold by Smith & Nephew. Although, as will be seen, the plaintiff's overall theory involves the role of the federal Food and Drug Administration ("FDA") in regulating medical devices, the complaint asserts only state law claims.[1]

This case is one of more than two thousand separate actions filed in various districts claiming that defective "pedicle screw fixation devices" caused plaintiffs to suffer physical injuries. Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multi–District Litigation transferred the cases to the United States District Court for the Eastern District of Pennsylvania for consolidated pretrial proceedings. MDL Docket No. 1014. After this case was remanded for final disposition, the defendant moved for summary judgment as to all of the plaintiff's claims.

### Facts [2]

Thomas Holland injured his back in a car accident in December, 1989. After non-surgical treatment failed to yield satisfactory results, in August, 1992, Holland's treating physician referred Holland to Dr. Warren Courville, an orthopedic surgeon. *See* Coo Aff., Dkt. No. 14, Ex. C. (Massand Dep.) At 33:22–24, 34:1–18; Ex. B (medical records). On October 22, 1992, Dr. Courville performed spinal fusion surgery on Holland using internal fixation hardware manufactured and marketed by Smith & Nephew as the "Simmons Plating System" (apparently named after the doctor who designed it).

Briefly stated, the Simmons Plating System employs steel plates to hold the spine rigid so that the intended bone fusion can succeed. The plates are fixed in place by means of screws. In Holland's surgery, Dr. Courville inserted the screws into the lumbar pedicles, which are bony extensions on either side of the spinal vertebrae.

The surgery did not accomplish the intended relief of Holland's symptoms and in some respects made things worse. In early 1994, surgery was performed to remove the hardware. The parties do not dispute that two screws inserted in the left pedicle invaded the spinal canal and impinged on the nerve roots. For the consequent injury and suffering Holland seeks to hold Smith & Nephew responsible.

Under the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. §§ 360c–360k, to the Food, Drug, and Cosmetic Act of 1938 ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, the FDA has the authority and responsibility to regulate the marketing and labeling of medical devices. The regulatory regime is complex, but it is sufficient for present purposes to note that a device like the Simmons Plating System cannot be marketed unless it has received thorough evaluation and "premarket approval" by the FDA, subject to limited exceptions. *See In re Orthopedic Bone Screw Prods., Liab. Litig.*, 159 F.3d 817, 818–20 (3rd Cir.1998) (outlining regulatory provisions). One of the exceptions is that the device is "sub-

---

1. The causes of action pleaded are negligence (Count I), strict product liability (Count II), express warranty (Count III), implied warranty (Count IV), negligent misrepresentation (Count V), fraud (Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), conspiracy (Count IX), "res ipsa" (Count X), and violation of Mass, Gen.L. ch. 93A(Count XI).

2. For purposes of summary judgment, the Court reviews the record and draws all reasonable inferences from the record in a light most favorable to the non-moving party, here,

the plaintiff. *Commonwealth v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 986 (1st Cir. 1995). In this case, the plaintiff's response to the defendant's Statement of Undisputed Facts (Dkt. No. 13) purports to place in dispute substantial portions of twenty three of the defendant's twenty seven statements of undisputed facts. However, the plaintiff provides citations to record evidence for only one of these alleged disputes. Since Local Rule 56.1 requires the nonmoving party to provide record citations for facts it claims are in dispute, this Court may, and does, disregard plaintiff's unsupported assertions.

stantially equivalent" to a device that was in use as of the enactment of the MDA. *Id.* at 819.

In October 1991, the FDA notified Smith & Nephew that it had cleared the Simmons Plating System to be marketed on the basis of the agency's determination that "the device system is substantially equivalent to device systems marketed in interstate commerce prior to May 28, 1976." Coo Aff., Ex. G. The FDA added:

This decision is based on your device system being found equivalent *only* to similar device systems labeled and intended to be fixed/attached to the spine by screw fixation/attachment to the anterolateral intervertebral bodies only.

* * *

This device system, if intended for use in pedicle screw fixation/attachment, would be found not substantially equivalent and would be a class III device under Section 513(f) of the Act. Class III devices are required to have an approved premarket approval (PMA) application prior to marketing.

*Id.* (emphasis in original).

With FDA clearance, Smith & Nephew began marketing the Simmons Plating System. Consistent with the limitation imposed by the FDA, the brochure provided with the system contained the following statement at two places, once in capital letters: "CAUTION: THE SIMMONS PLATING SYSTEM IS INTENDED FOR SCREW FIXATION/ATTACHMENT TO THE ANTEROLATERAL INTERVERTEBRAL BODIES ONLY." Coo Aff., Ex F at SNR0034783, SNR0034796.

Although the Simmons Plating System was not cleared by the FDA for use as a device to be attached to the pedicles, surgeons began using it in that fashion anyway. Use of a device (or a drug) in a way not approved by the FDA—called "off-label use"—is a widespread practice in the medical community. *See In re Orthopedic Bone Screw Litig.,* 159 F.3d at 830–31 & n.

1 (Cowen, J., dissenting). The FDA has recognized that it cannot regulate the medical judgments that lead to off-label use. In a paper issued by the FDA December 21, 1993, entitled "Update on Pedicle Screws," the agency noted:

In practice, surgeons often use orthopedic screws which FDA has cleared for other purposes, such as repairing long bones in the arms and legs, as pedicle screws. Such use of medical devices for non-approved purposes has traditionally been regulated by the hospitals in which physicians practice and by their state medical boards, not by FDA.

Bierhans Aff., Ex. 40 at 2.

What the FDA *does* regulate is the promotion and marketing of such devices by manufacturers. In the same "Update," the FDA further noted:

To encourage surgeons to use orthopedic screws in the pedicles of the spine, some manufacturers have been promoting this practice through professional advertising and training courses. This type of promotion is illegal.

*Id.* The plaintiff offers evidence that Smith & Nephew participated in, even sponsored, "continuing medical education" seminars that promoted the pedicle fixation use of the Simmons Plating System, contrary to the limitation imposed by the FDA. The plaintiff's surgeon, Dr. Courville, attended some of these seminars and there received instruction from other orthopedic surgeons in the use of the Simmons Plating System, and other similar devices, as a method for internal fixation using pedicle screws.

In October, 1992, when he performed Holland's surgery, Dr. Courville was aware that a major risk of implanting a plating system with screws in the lumbar pedicles was that an improperly placed screw could enter the spinal canal. *See* Coo Aff., Ex. E (Courville Dep.), at 85. He was also aware of other risks, as well as the potential benefits, associated with pedicle screw fixation. *See id.* at 85, 66. Further, Dr. Courville knew that the FDA

had not cleared the Simmons System for use in pedicle screw fixation. *See id.* at 70–71. Dr. Courville judged that the FDA regulatory status of the Simmons System was less important than his medical determination that its use in this manner was an appropriate treatment option for Holland. *See id.* at 58. It was his opinion that as of October, 1992, use of spinal instrumentation with screws in the pedicles, including the Simmons Plating System, was consistent with the standard of care for orthopedic surgeons practicing in Massachusetts. *See id.* at 63.

### Discussion

Although the plaintiff has set forth eleven distinct causes of action in his complaint, he really has one fundamental proposition that, in one way or another, underlies each of the alternate legal theories. The proposition is that the Simmons Plating System was not suitable to be used for pedicle fixation procedures. It is from this proposition that the plaintiff argues that warranties were breached, that the device was negligently and defectively designed, that the defendant made misrepresentations about the suitability of the System for pedicle fixation surgery, and so on. He will not prevail on any of his multiple causes of action unless he can establish his fundamental proposition.

■ He cannot. The record on the motion for summary judgment contains *no admissible evidence* tending to prove that the Simmons Plating System was unreasonably dangerous for pedicle fixation. The only evidence the plaintiff proffered that might have supported that proposition has been stricken on the defendant's motion as inadmissible.

■ That leaves the plaintiff only the argument that the defendant improperly promoted the use of the Simmons Plating System for pedicle fixation in defiance of the FDA's warning and in violation of the

MDA and the FDCA. For present purposes it may be assumed that the plaintiff could establish those facts. But those facts do not advance the proof of any of the state law claims the plaintiff has pleaded.[3] For example, the fact that the defendant promoted the product without permission does not tend to establish that the product was defective or unfit for its intended use (even if the intended use was forbidden by the regulatory authorities). The mere fact that the FDA has not cleared a product for a particular use does not mean that the product is not in fact suitable for that purpose; it simply means that the FDA has not cleared it.

There is evidence that the FDA was cautious about pedicle fixation devices and therefore warned manufacturers like Smith & Nephew that it intended to enforce its prohibition against off-label promotion of such devices. However, the FDA took that position not because it had concluded that the devices were unsafe, but because it wanted to be sure there was a full premarket approval process. In this connection, it bears noting that the Simmons Plating System had been approved for anterolateral intervertebral fixation not after a full premarket review, but under the exception permitting it to be marketed as substantially equivalent to a "grandfathered" product. Since the FDA concluded that the System was not similarly equivalent if it were considered a pedicle fixation device, its use as such was not permitted under the exception, but only after full review. There was no adverse judgment by the FDA about the System as a pedicle fixation device, only a withholding of judgment. That fact has no significant value to the plaintiff in his task of proving his state law claims.

■ There is a second reason grounded in the facts of the case why the plaintiff cannot prevail on any of his theories. On the record presented, it is clear that he

---

**3.** The plaintiff does not have a cause of action for the defendant's violation of the MDA. *See In re Orthopedic Bone Screw Litig.*, 159 F.3d at 824 ("It is, indeed, well established that Congress has not created an express or implied private cause of action for violations of the FDCA or the MDA.").

cannot prove that any act or omission by the defendant was the proximate cause of his injury. The decision to use the Simmons Plating System as a pedicle fixation device in the plaintiff's surgery was made by Dr. Courville, who testified in his deposition that he understood the risks involved—including the risk that the screws would invade the spinal column—but determined that the plaintiff was, because of his physical size, an appropriate candidate for the use of pedicle fixation. *See* Coo Aff. Ex. E at 85. As noted above, Dr. Courville also testified that he was aware that the FDA had not cleared the System for use in pedicle fixation but that the regulatory status of the product was less important to him than his medical judgment about what the appropriate treatment was for the plaintiff. *Id.* at 58.

Dr. Courville plainly exercised his own medical judgment to choose to fix the hardware by pedicle screws. The plaintiff's argument that Dr. Courville was fooled into this decision by the defendant's unlawful promotion of the off-label use of the System is simply not supportable in light of Dr. Courville's uncontradicted testimony. There is no evidence from which it could be deduced that the defendant's participation in the seminars that promoted the use of pedicle fixation devices controlled or misdirected Dr. Courville's medical judgment. To the contrary, the evidence is that Dr. Courville made his own decision, fully aware that the use of pedicle screws had not been cleared or approved by the FDA.

Moreover, the parties seem to agree that it was where the screws were placed in the pedicles that led to the plaintiff's injury. As the plaintiff himself put it in his brief in opposition to the summary judgment motion, "The Plaintiff's expert, *as well as the Defendant's experts,* all agree that the *cause* of Plaintiff's neurological injuries is damage to the nerve roots as a result of the malpositioning of the pedicle screws into the spinal canal." Pl .'s Mem. at 18 (emphasis in original). The positioning of the screws was the responsibility of the surgeon, not the manufacturer.[4]

In sum, the defendant's unlawful promotion of the off-label use of the Simmons Plating System (assuming that it occurred) is not a wrong that can be directly remedied by this private plaintiff. His proof of such unlawful promotion does not advance his proof of any of the state claims asserted in the complaint. Further, in light of Dr. Courville's testimony (and the medical record), the plaintiff cannot establish that the defendant's unlawful promotion of the System for pedicle fixation was the proximate cause of the plaintiff's injury

The defendant's motion for summary judgment is GRANTED, and judgment shall be entered in the defendant's favor on each count in the complaint.

It is SO ORDERED.

---

**4.** Dr. Courville is not a defendant here, and there is no claim by the plaintiff that the surgery was negligently performed.